IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARY WHITE : | | |
|     Plaintiff, : | | |
| : | | |
| v. : | Civil Action | |
| : | | |
| NATIONAL RAILROAD PASSENGER : | No. 24-00294 | |
| CORPORATION a/k/a AMTRAK and : | | |
| ELITE BUILDING SERVICES : | | |
|     Defendants. : | | |

**MEMORANDUM**

J. Younge                                                                                           July 9, 2024

## I.   INTRODUCTION

Presently before the Court is Defendant Elite Building Services' Motion to Dismiss Co-Defendant National Passenger Railroad Corporation a/k/a Amtrak's crossclaim for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).  (Motion to Dismiss, ECF No. 15.) The Court finds Amtrak to have sufficiently pled claims to permit it to proceed with discovery. Upon considering all papers submitted in support of this Moton to Dismiss and in opposition thereto, and for the reasons set forth in this Memorandum, Defendant's motion will be DENIED.

## II.  FACTUAL BACKGROUND[1]

In October of 2020, Elite Building Services (hereinafter "Elite") entered into a Services Contract (hereinafter "the Contract") with National Passenger Railroad Corporation a/k/a Amtrak

---

[1] "The crossclaim must be construed against the background of the complaint, for it is only if the plaintiffs prevail against [the crossclaim plaintiffs] that they would have any basis to seek indemnity against [the crossclaim defendant]. Further, it is only on grounds alleged against [the crossclaim plaintiffs] that plaintiffs could prevail against them." *Cimino v. Yale Univ.*, 638 F. Supp. 952, 958 (D. Conn. 1986).

(hereinafter "Amtrak") (Defendant's Crossclaim Against Co-Defendant Elite Building Services, ¶ 12, ECF No. 11.) Under the terms of the Contract, Elite was responsible for hiring employees and assigning them to Amtrak facilities to perform cleaning services. (Amtrak's Conditions of Purchase, Crossclaim against Co-Defendant Elite Building Services, Exhibit B, ECF No. 11-2.) One such employee, Mary White, is the Plaintiff in this case. (Complaint, ¶ 3, ECF No. 1) Pursuant to the Contract, Plaintiff was assigned by Elite to an Amtrak facility wherein she alleges to have been continually harassed by Amtrak employee, Jimmy Newman. (*Id.*) Prior to her termination on December 5, 2022, Plaintiff alleges to have reported Newman's harassment to both her supervisor, Doris Coverdale, an Elite employee, as well as Newman's supervisor, Bill Tutthill, an Amtrak employee. (*Id.* at 4.) Shortly after her reporting the alleged misconduct, Amtrak temporarily suspended Newman from his duties. (*Id.* at 5.) Plaintiff was subsequently terminated, and she claims that Amtrak, acting in the capacity of her employer deactivated her security badge.

Plaintiff initiated this action against both Elite and Amtrak on January 22, 2024. Plaintiff asserts that both Amtrak and Elite "failed and refused to take any remedial action after receiving notice of the [alleged harassment]." (Complaint, ¶ 6.) Amtrak subsequently filed a response to Plaintiff's Complaint, along with a crossclaim against Elite that is subject to this Motion to Dismiss. (*See* Amtrak's Answer and Affirmative Defenses to Plaintiff's Complaint and Crossclaim Against Co-Defendant, ECF No. 11.) In its crossclaim, Amtrak asserts that pursuant to the language of the contract, Elite is required to provide indemnification to Amtrak. (*Id.* at 12.) The crossclaim at issue points to Paragraph 9 of the main contract, which lists out several addendums incorporated by reference. (Amtrak's Conditions of Purchase, Crossclaim against Co-Defendant Elite Building Services, Exhibit A, ECF No. 11-1.) The indemnification provision

that is implicated in this motion to dismiss is found in the very first addendum referenced, titled "conditions of purchase." (Amtrak's Conditions of Purchase, Crossclaim against Co-Defendant Elite Building Services, Exhibit B, ECF No. 11-2.) The relevant language of the provision is reproduced below:

> **INDEMNIFICATION**. (A) Contractor agrees to defend, indemnify and hold harmless Amtrak, its officers, directors, employees, agents, successors, assigns and subsidiaries (collectively "Indemnified Parties"), from and against any claims, losses, liabilities (including without limitation environmental liabilities), penalties, fines, causes of action, suits, costs and expenses incidental thereto, (including costs of defense and attorneys' fees) (collectively "Claims"), which any of the Indemnified Parties may hereafter incur, be responsible for or pay as a result of breach of warranty, breach of contract, employment, tort or statutory claims, injury or death of any person, or damage to or loss (including loss of use) of any property, including property of the parties hereto, arising out of or in any degree directly or indirectly caused by or resulting from the Supplies or Services, or from activities of or work performed by Contractor, Contractor Agents, or any other person acting for or with the permission of Contractor under the Order, or as a result of Contractor's failure to perform its obligations in compliance with this Order. (B) In addition to the foregoing, Contractor agrees to defend, indemnify and hold harmless the Indemnified Parties, irrespective of any negligence or fault on the part of the Indemnified Parties, from and against any Claims which any of the Indemnified Parties may hereafter incur, be responsible for or pay as a result of injuries (including death) to any employee of Contractor or Contractor Agents.

(Amtrak's Conditions of Purchase, Crossclaim against Co-Defendant Elite Building Services, Exhibit B, ECF No. 11-2.)

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise the defense that the complaint in question "fail[s] to state a claim upon which relief can be granted," known as a motion to dismiss. The standard for a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is examined in detail in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). After *Iqbal*, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. *Id.* at 678; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive dismissal, 'a complaint

must contain sufficient factual matter, accepted as true, to state a claim [for] relief that is plausible on its face.'" *Tatis v. Allied Interstate*, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Thus, this Court must examine Defendant Amtrak's crossclaims to determine whether it can infer that Co-Defendant is liable for the alleged misconduct.

**IV.    DISCUSSION**

Co-Defendant Elite now moves to dismiss Co-Defendant Amtrak's crossclaim in its entirety. Elite argues that: (1) it should not be required to indemnify Amtrak against its own willful behavior, as alleged by the Plaintiff; and that (2) the indemnity provision does not appear in the three-page, nine paragraph main contract, and as a result, is not clear or unequivocal such that it should be legally enforceable.

> A.   *It Would be Premature at the Pleading Stage for the Court to Determine Whether Amtrak was Liable for Plaintiff's Alleged Injury and Whether Its Conduct was Simply Negligent or Willful, Wanton and Reckless.*

Defendant Elite seeks dismissal of Co-Defendant Amtrak's crossclaim alleging that Amtrak should not be allowed to seek indemnification due to its own intentional "misdeeds and misconducts" as alleged by Plaintiff in her complaint. Amtrak, on the other hand, claims that absent further discovery, it would be premature for the Court to rule on the question of liability and whether its conduct was intentional, willful, wanton and/or reckless.

The Court agrees with Amtrak. At this preliminary phase of the litigation, Amtrak's claims need only "raise a reasonable expectation that discovery will reveal evidence" relevant to determining whether Elite indeed owes indemnification to Amtrak. *Twombly*, 550 U.S. at 556.

4

As Amtrak correctly points out, Plaintiff's complaint and Amtrak's answers differ markedly. The extent to which Amtrak may have engaged in alleged intentional, wanton/reckless misconduct, if at all, is uncertain, thus it is not clear if indemnification is warranted.

> B. *Without Further Review of the Facts and Circumstances Surrounding Negotiations Between the Parties, it is Unclear Whether Elite Agreed to Indemnify Amtrak.*

Defendant Elite seeks dismissal of Co-Defendant Amtrak's crossclaim, arguing that "[t]he indemnification language does not appear in the main contract" and therefore should not be enforceable. (*See* Motion to Dismiss Crossclaim of Defendant National Railroad Passenger Corporation a/k/a Amtrak.) Amtrak on the other hand, makes the argument that the provisions at issue are clearly identified as part of the agreement, and are enforceable under Pennsylvania law. (*See* Defendant National Railroad Passenger Corporation a/k/a Amtrak's Opposition to Co-Defendant's Motion to Dismiss Crossclaim.)

This Court finds that the present record is insufficient to ascertain whether the indemnity provision is enforceable. The Third Circuit has found parallel agreements to be enforceable even when contained in separate, unsigned documents, so long as they are properly incorporated by reference. *Materials Handling Enterprises, Inc. v. Atlantis Technologies, LLC*, 563 F.Supp.3d 387, 392 (W.D. Pa. 2021) (citing *Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 447 (3d Cir. 2003)). "A separate document is properly incorporated by reference where '(1) the underlying contract makes clear reference to [the] separate document, (2) the identity of the separate document may be ascertained, and (3) incorporation of the document will not result in surprise or hardship.'" *Id*. Where the contracting parties are "seasoned merchants," "it is appropriate to require [the parties] to exercise a level of diligence that might not be appropriate to expect of a non-merchant." *Id*.

5

The *Standard Bent Glass* decision outlines criteria for the enforceability of contractual provisions not included in the main body of the contract, particularly focusing on the first element—a definite and seasonable expression of acceptance. *Std. Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 448-49 (3d Cir. 2003). The Third Circuit's analysis primarily focuses on the parties' expression of acceptance, as demonstrated not in any written signatures, but rather in the communications exchanged during negotiations. *Id.* at 449. Specifically, the Third Circuit examined letters sent back and forth during all stages of the negotiations to determine that there, in fact, had been expression of acceptance. *Id.* In the current case, the available record does not provide evidence related to the facts and circumstances surrounding the negotiations process. Discovery may reveal further communications between the Parties which would shed light on the question of whether Elite agreed to indemnify Amtrak. Therefore, it would be premature to dismiss claims against Defendant Elite at this stage in the litigation.

## V.  CONCLUSION

For the foregoing reasons, Defendant Elite Service's Motion to Dismiss is **DENIED**. An appropriate Order follows.

**IT IS SO ORDERED.**

BY THE COURT:

/s/ John Milton Younge
**Judge John Milton Younge**

6